Argued Cases No. 2020-2256, Zalzar FZE v. Director, Chief Executive Officer of the Army and Air Force Exchange Service, Mr. Henderson. Thank you, Your Honor. And may it please the Court, my name is Paul Henderson for Appellant Zalzar FZE. I'd like to begin this morning by discussing Zalzar's logistics fees claim, where I think some additional discussion can help illuminate the proper interpretation of the underlying legal contract and correct some reversible errors as to the determinations the Board made as to whether Zalzar ceased receiving logistical support from the United States. In deciding against Zalzar on this claim below, the Board adopted an erroneous legal interpretation, interpreting provisions that are supposed to be in harmony with one another to be in conflict when so far as to strike entire paragraphs from the contract itself. I guess if you would, Judge Proust, I'm sorry to interrupt, but if you can conclude in what if you can include in what you're saying, an answer to why the contract language does not plainly state that you're responsible for all logistical costs. Thank you, Your Honor. The first, I believe Your Honor is referring to Exhibit D, this is Paragraph 1, all costs associated with employees to include but not limited to the following are the responsibility of the contractor. That's certainly the case, Your Honor. But I would direct this Court's attention to, number one, the logistic support paragraph in the solicitation, and also that was amended into the contract itself in the Fifth Amendment and that was in 2009, that plainly states that Zalzar was receiving logistical support. And it's not just in that logistical support paragraph. It's also in Exhibit D, Paragraph 7, where the contract, again, expressly contemplates Let me give us an appendix page just so we can follow along right at this moment where we are. Absolutely, Judge Proust. In the solicitation, this is Appendix 1037, it says, Currently, logistic support is being provided. In the very next page, Appendix 1038, logistic support, food, housing, and medical. In the contract itself, Exhibit C, Paragraph 7, this is on Appendix 1085, again, expressly includes food, housing, and emergency medical. Logistical support provided by the military to the contractors and employees is subject to change. And the contractors... This is Judge Chen. The Paragraph 5 of the solicitation, that wasn't included in the contract, right? That's correct, Judge Chen. However, the pricing sheets or the wage and fee schedules that Zalzar submitted pursuant to the solicitation were included, and those included line items specifically for logistic support. Again, turning back to Appendix 1037 and 1038, I'll start with 1038. There's the wage and fee schedule, and at the bottom, it says logistic support, food, housing, and medical, and then there's a fill-in-the-blank for the number of dollars per hour. And immediately, that raises the question, what is logistic support? Ah, if you look to the very previous page, the very last paragraph, there it is, bold and underlined, logistic support. And it explains exactly how this surcharge is supposed to operate. And... Well, but... Counsel, this is Judge Prost again. Sorry to interrupt, but even if there's some ambiguity in this, I guess, thing that was left out of the contract and later somehow put in, the board dealt with that question, did it not? And it said it's ambiguous, so we look to extrinsic evidence, and why did their conclusions with respect to extrinsic evidence not deserve substantial evidence support when you look at the record? They're entitled to substantial evidence, right, review on the extrinsic evidence question? That's correct, Your Honor. We have three responses. Number one, the course of the conduct of the parties. The board focuses in on the fact that Zalzar did not submit this logistic fee surcharge for the fee that issued here until 2014. We note, however, that the government paid them. But number two, the board didn't wrestle with or even discuss a point that we raised in a reply below, and again, here on appeal, which is that all along, I believe it was in 2010, in the Ninth Amendment to the contract, the parties agreed to add workers in Oman, where there was also a logistic support surcharge of $5 per hour added, and as the government's own witness conceded shortly after trying to waive away the 2014 payments of the logistic fee surcharge, the witness quickly had to correct the record and explain, well, actually all along, we were also paying this $5 per hour surcharge that Zalzar was invoicing us, and that had been present since 2010. So this is entirely consistent. It's unmistakably consistent with the conduct of the parties. I'm lost in your story. What's the $5 an hour you're referring to? Yes, Judge Chen. This is on Appendix 1338. It's, I guess, 1336 to 1338. This is the Ninth Amendment to the contract signed in 2010. It adds workers in Oman, and as you can see in Appendix 1338, you see this $5 per hour logistic support surcharge listed for workers in Oman. And again, the government's own witness conceded... In that case, there was never any logistical support provided in Oman. Is that right? That's right. This is on Appendix 644. Right. By the time they did provide employees... It was just always baked in from the beginning that you would be able to collect fees for that logistical support. Well, but the way... Your Honor, the way... Here, you were not collecting any fees for logistical support from the beginning of your contract in 2008, right? Your argument, your theory has always been that there was a change in the amount of logistical support being provided to your workers. Well, allow me to make sure that I'm following your question correctly. Allow me to state the following. The testimony was that there was a baseline price per hour wage that was included for the workers in Oman, and that it also included a $5 logistic fee surcharge. But by the time they started billing, the logistic support had changed. The housing fell through, and so that $5 per hour was being added on top of the number that was provided as the baseline. So it's exactly what we contend how the contract should operate. The parties were clearly following this course of conduct as to those workers in Oman. Right. Furthermore... But Oman is not part of this appeal. Now we have to wrestle with the facts of your case, which, as I understand it, you're saying there was a change in logistical support being provided somewhere during the course of the performance of the contract. That's correct, Judge Chen. And then we have to look at the contract, and you were looking at it before, at A1085, and it plainly states at A1085, should the logistical support change during the contract, the contractor should submit a price revision in accordance with paragraph 5 of Exhibit A. And that, of course, is at A1077, which is all about modifying contracts, and you have to modify any contract in writing and signed by both parties, and we don't have that here. So, why is the board wrong when it said these kinds of logistical support claims that you have needed to go through a price revision? Your Honor, two points that dovetail together. To begin, I want to slightly resist the suggestion that Oman has no bearing on the present appeal. It was part of the same contract, and the conduct of the parties in paying this surcharge fee for workers in Oman, and invoicing and paying that surcharge fee, bears on the interpretation of the contract. And so, to that degree, the workers in Oman are very relevant to the proper interpretation. And again, if the interpretation that you just set forth, that there needed to be a logistical support change, was the correct reading of the contract, then what the parties were doing with the workers in Oman doesn't make any sense, as the government's witness seems to kind of uncomfortably concede. Oh, well, you know, if we can explain away what happened in 2014, that was just a mistake by somebody lower on the chain of command. But I do have to admit on the record that, in fact, all along, we were operating this automatically apply the $5 logistics and surcharge, and paying them without requiring this price revision process that Your Honor just laid out. And if I could, just to answer the second part of your question, very briefly, knowing that I've fallen into rebuttal time, Paragraph, excuse me, Exhibit C, Paragraph 7, as you with Paragraph 5 of Exhibit A, I just want to provide three key responses that I think will really get to the heart of the appeal here. Number one, there's no number five, as we point out in our reply brief. But even if this Court is not convinced and thinks that, well, that provision on, I believe it was Appendix 1077 fills in the gap there, even if that were true, the number two, this is talking about changes, modifications, additions, or deletions to the contract. But the logistic fee surcharge was already included in the pricing all along. Nothing was changing. The base fees and the surcharge itself were always there. There was no need to modify, in other words, anything that was included in the wage and fee schedule. And then, finally, in number three, even if that were not convincing, I note at the top of 1077, there's a caveat. Except as otherwise specifically provided in this contract, all changes, modifications, additions, et cetera, are subject to this process. We submit that the logistics fee, Paragraph 5 in the solicitation, and it was later added back into the amendment later on, is just such a specific exception to this general rule. And with that answer for the questions, I'll reserve the remainder of my time for rebuttal. Okay. Mr. Anderson, is there anything else you feel you want to tell us in your argument in chief? Yes. As to the factual determinations, I would like to quickly hit on, okay, so number one, there's the question of interpreting the contract itself. But then number two, there's the factual determination of whether or not this logistical support ever changed. I'd like to begin with medical. Here, the board's decision is barren, we submit. On Appendix 7 through 8, you see the board march through evidence that we submit doesn't make out the board and doesn't support the board's decision. But at least it can point to items in the record in DSHA that medical support didn't change. Again, I can address that during my rebuttal time. But at least to the meal provision, the board doesn't point to any sort of contrary evidence whatsoever. ZALs are put forward to witnesses. The board did not make an adverse credibility determination as to either of those two witnesses, and the government has not pointed to any contrary evidence in the record that would otherwise point in a different direction. For that reason, there's not a scintilla of evidence we submit upon which the board was able to reach its conclusion that these free meals weren't being provided. That fails the substantial evidence standard. And furthermore, when the government tries to backfill with some reasoning, like why it might have been insufficient, none of that reasoning appeared. And the board's decision, you know, this is an agency determination. The decision and reasoning of the board must be taken on its own. It can't be backfilled on appeal. For these reasons, we submit that at a minimum, the board's determination lacks substantial evidence as to whether the meal provision ever ceased. Okay. Thank you. And we'll save you rebuttal time, Mr. Henderson. Thank you very much, Your Honor. Let's hear from the government. Mr. Volk. Thank you, Your Honor. May it please the court. Zalzar is asking the court to retroactively reprice its contract to grant it millions of dollars that the government never agreed to pay. This contract allowed Zalzar plenty of flexibility to renegotiate pricing during performance, and it was free to walk away from the contract if the government wouldn't agree. But the terms of the contract don't afford any basis for Zalzar to recover through litigation price increases that were not agreed to by the parties. Regarding Zalzar's first claim, its logistics fee claim, the board correctly rejected this, both on the facts and on the law. Zalzar did not prove to the board that the military ever changed its policies with respect to logistics support in the locations it issued. And even if it had, Zalzar's interpretation of the contract was unreasonable, as the board recognized. The contract specifically stated in Exhibit C, Paragraph 7, should the logistical support change during the contract, the contractor should submit a price revision request. And that's on Appendix 1085. And there's no dispute that that was in the contract all along. So the best Zalzar can hope to do with the other things it points to is create an ambiguity on the face of the contract. But as the board recognized, if a resort to extrinsic evidence is necessary, it doesn't help Zalzar. Because for about six years, Zalzar invoiced the government for exactly what was agreed to by the parties, and no more. And it only started asserting that it should get about what amounts to $4.2 million, going back to near the beginning of the contract, once it was notified that the government was terminating the contract. With respect to Zalzar's appeal regarding its bad faith claim, the board also correctly rejected that claim. Zalzar never provided any evidence that the government had any intent to harm Zalzar, as opposed to doing what was best for the government, or that it was doing anything that took away or deprived Zalzar of the fruits of its bargain. Those are the things that Zalzar would have had to demonstrate to establish bad faith or a violation of the implied covenant of good faith and fair dealing. And none of the allegations that Zalzar made came close to doing that. Finally, with respect to the last appeal number, this is the board docket number ending in 5-3, which Zalzar refers to as its price increase claim. That decision, in our view, is not final, because the board expressly stated that both In that situation, although this court has acknowledged that there is some flexibility with respect to when board decisions are final, in that situation, under our view of the court's precedent, that decision is not final and not appealable, and therefore, Zalzar's appeal of that ASBCA docket number ending in 5-3. Counsel, this is Judge Prost. But I think you recognize that our case law, our experience, is not to necessarily apply a strict finality requirement to board appeals in these circumstances, right? So you don't dispute that we would have the ability to do this, particularly if we think judicial efficiency, et cetera, weighs on that side, right? Well, actually, Your Honor, I think it's true the first part for sure. Several cases from this court say that there's a flexible concept of what's final. However, as we interpret the court's decisions, if it finds that it is not a final decision, of course, that language is used in the statute providing this court's appellate jurisdiction of final decision of the board. If the court finds it's not final, then it would not have jurisdiction. So there's no flexibility. If it finds that the decision is not final, the flexibility, as I understand it, is in deciding whether it is or is not a final decision. And in the court's precedent, such as the Teledyne case that we cite and others, we see the court making clear that for this court to conclude that the board has rendered a final decision, it needs to have disposed of everything that was before it. And so there are plenty of cases in which this court explains that we can figure that out by looking at the scope of the... Well, Judge Prost, again, counsel, I appreciate your response, but there are other cases, are they not, like Garrett and HTC, where we said where the board has nothing more to do as to the issues presented on appeal, we have jurisdiction to hear the appeal. Is that not applicable to this case? Right. Again, I think that's absolutely a correct statement. And we feel that, in our view, applying that standard, and we would say that standard is applicable to this case as any other. Applying that standard, we feel that the board said expressly in this opinion that with respect to this appeal, it does have more to do because it sent the matter back to the parties with respect to... Well, of course it has more to do. We're not... I'm not debating that. But what more does it have to do as to the issues presented on appeal? The question presented on appeal is not going to be up before the board again, right? That's right, in that Zalzar does not challenge the board's two 7-cent-per-hour rulings in its favor. And so if that's split out, if the court does see that as separate and severable from the three categories within that same claim, that Zalzar is appealing to this court, then we would agree that the court would have jurisdiction if it sees those as separate matters. We don't see them as separate matters because we see them as part of the same case, as part of the same claim. And so from that perspective, we see that as no different than if you had one case from a court of federal claims or a district court in which partial relief is granted on some But even if the court finds that there is jurisdiction for this appeal, it should be affirmed. The language in the contract made clear that there was no unilateral right to a price increase, that the government had to agree, and that Zalzar's only remedy if it couldn't get the government to agree would be to terminate the contract. But this is an unusual situation where both parties had the right with 30 days notice, no assertion of cause, and no basis for saying the other party breached or anything like that, both parties could terminate. So Zalzar had plenty of opportunity throughout the contract to go to the government and try to renegotiate. And in fact, when Zalzar relies heavily on that example of Oman, in our view, that doesn't support Zalzar's argument, because it simply provides an example of when there was an agreement. If you look at Appendix 643, which Zalzar cites for this, it indicates how in that situation there was an agreement to pay those rates. And so that's really the fundamental point that we feel we're making, is that Zalzar at any point could have asked the government to agree to higher rates. But having not done that, it can't use the court system. There's nothing in the contract that allows it to recover through litigation rates that the government never agreed to. My understanding is the other side, Zalzar is saying that there was some kind of baked in agreement as to what the rates would be should logistic services change. And it points to some quotes in the record and says, there it is. So that's why we are just like Oman. What's your response to that? Well, we see it as quite different. From the facts alone, we can see that it's undeniably different, because in the Oman situation, these things were being paid. This wasn't a situation where Zalzar came back later and through litigation recovered these Oman fees. Rather, it was something that was included by agreement and paid. And so the difference is that there wasn't any agreement with respect to these costs  And that's reflected by the basic facts of the case. That one, Zalzar is attempting to recover them because they weren't paid. They weren't invoiced. And so there just wasn't this agreement. And so if you look at Appendix 643, the testimony that Zalzar is relying on for this Oman point, at the bottom of that page, you see how the testimony is that there was communication in the contract folder where the former, this was the later contracting officer testifying about seeing communications from the former contracting officer of the government, Mr. McWilliams, is speaking to and continues on to the next page about how there was communication about how this housing was ultimately not provided. And so there was an agreement to pay this fee. And so that's why we see that as not supporting Zalzar's arguments at all, but actually supporting ours, because it shows that if Zalzar had wanted to, it's an example of how Zalzar was free to go negotiate with the government if it wanted to, and all it needed to do was get the government's agreement. But if it couldn't, there's no basis under the contract for the board or now the court to say that the government has to pay something that there was never an agreement to pay. Thank you. Okay. Any more questions for Mr. Volk? No. No. Okay. Mr. Henderson. Thank you, Your Honor. I'd like to pick up where Judge Chen left off. Pages 643 to 644, this is the testimony regarding logistics fee surcharge for Oman, clearly and unmistakably establishes that Zalzar's interpretation of this contract is correct. Under the board's interpretation, there would have needed to be some sort of formal agreement, written amendment process. That is not the testimony we have for that $5 surcharge in Oman located on pages 643 and 644. If I could briefly touch on some of the context. This is 643, line 11. The question was asked, okay, for the logistics support line item there, did Zalzar ever invoice for that? They did at the very end of the contract, the last two months. We had, I want to say, a COR assistant that processed the invoices. He approved them, which was not correct. Up until then, they had never submitted anything for that, referring to the logistics fee surcharge line. And then immediately after, can I make a clarification on that? Yes, absolutely. Okay, the only exception to that is Oman. In Oman, they had $5 listed on their logistical costs, and they may have submitted their pricing for Oman, skipped to page 644 at the top, line 2, but by the time they did provide employees in Oman, there was no logistical support that was there, so the entire $5 was added to there at their price per position. This is exactly what Zalzar is contemplating as far as the proper interpretation of the contract. I want to split out two questions that I think are important. One is the course of the conduct of the parties as it reveals whether or not there was a logistical fee change, and then second, the course of the conduct of the parties as to what was the actual agreement that they intended. And if there are no further questions. No, please finish your thought. Thank you, Your Honor. So as to the first question of legal interpretation, we think it's unmistakable and clear when you look at the logistic support line items compared to the logistic support paragraphs that were in the solicitation and later in the contract itself. And when you look at the course of conduct in Oman, especially the government's own witness describing it, our submission is it is unmistakably clear as a matter of law that Zalzar has adopted the correct interpretation here. And as to the factual determination as to whether or not the support changed, again, we direct this court's attention to the board's very cursory parsing of the evidence as to the meal provision, as to the medical provision. We submit just two things very briefly with the court's permission. Number one, the board made much of the fact that Zalzar had not negotiated new prices or submitted a price revision. But again, that question is answered once the proper interpretation of the contract is assumed. The only reason that the board viewed the evidence in the way that it did was because the board had in mind the wrong view of the contract itself. And then number two, as to the Department of Defense Instruction 3020.41, this was the other key moment upon which the rest of the board's evidentiary findings lay. This also we submit was a legally incorrect interpretation. One, because that instruction only made costs reimbursable, which does not foreclose the government from making a policy or a contract that would allow the government to provide these services free of charge. That's evident in the contract itself where over and over it talks about the government providing medical, the government providing medical support throughout the contract. And indeed, Amendment 10 has to come back and say notwithstanding anything in the contract, this policy has now changed. And then number three, it's also this Department of Defense Instruction speaks specifically to treatment and transportation to, quote, the selected civilian facility, whereas here Zalzar's contention is that the treatment was taking place at military treatment facilities, which would make this inapplicable. Once those legal corrections are made, that is, corrections to the legal interpretation of the instruction and the contract itself, the rest of the board's factual determinations melt away when viewed in a new light. For these reasons, we submit that the decisions against Zalzar below should be reversed. We stand in our briefs and submissions as the other claims. And if there are no further questions, I yield my time. Any more questions for Mr. Henderson? No. All right, thank you. Our thanks to counsel. The case is taken under submission.